The United Presbyterian Women's Association of North America, Appellant, *v.* The County of Butler et al.

Argued April 19, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*William A. Wilson,* and with him *Galbreath and Galbreath,* for appellant.—The determination of what ground is necessary for the occupancy and enjoyment of the charity is primarily for its governing board and not for the court. County of Lancaster v. Y. W. C. A., 92 Pa. Superior Ct. 514.

*Zeno F. Henninger,* for appellee, cited: Mercersburg College et al., 53 Pa. Superior Ct. 388.

Opinion by Parker, J., July 14, 1933:

The appellant, an owner of a tract of land containing 237 acres in Adams Township, Butler County, Pennsylvania, instituted proceedings in equity claiming that the land was devoted to such a charitable purpose that it was exempt by law from all county and township taxes, and prayed that the defendants be restrained from collecting county, poor, and road taxes that had been levied. The taxing authorities had exempted 18 acres of such land, but assessed taxes on the remaining 219 acres. The defendants concede that

the 18 acres is devoted to such a charity as entitles it, by virtue of the Act of July 17, 1919, P. L. 1021, and amendments of 1921 and 1925 (72 PS 4701), to exemption from some taxation, but argue that the remaining 219 acres are not "necessary for the occupancy and enjoyment" of the privileges which such a charity is entitled to exercise and for which it is being maintained and are, therefore, subject to taxation. This contention raises the sole question involved.

On final hearing, the plaintiff called witnesses who detailed the nature of the charity and explained the use made of the land, while defendants called a single witness, one of the county commissioners, who testified alone as to how the assessment was made. There was not any dispute as to the primary facts. The learned chancellor concluded as a matter of law, that the owner was not entitled to exemption on the 219 acres and dismissed the bill. He did not specifically find as a fact that a necessity for the use of this entire tract did not exist, but from the facts found as a legal conclusion that plaintiffs were not entitled to the exemption. Even if this amounted to a finding of fact, it was an inference founded upon facts not in dispute, and as a consequence we may determine the accuracy of such inferences.

The question presented here involves a construction of the Act of July 17, 1919, P. L. 1021, as amended at different times (72 PS 4701). The parts of this act essential to a determination of the question involved are as follows: "All ...... associations, and institutions of learning, benevolence, or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by the public or private charity: Provided, That the entire revenue derived by the same be applied to the support of and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof,

and for no other purpose ...... be, and the same are hereby, exempted from all and every county, city, borough, township, bounty, road, school, and poor tax: Provided, That all property, real or personal, other than that which is in actual use and occupation for the purpose aforesaid, and from which any income or revenue is derived, shall be subject to taxation ......" As to such provisions of this act as are involved in the case here presented, there has not been any substantial change in the law since the original Act of 1874 was passed pursuant to Article IX, Sec. 1, of the Constitution of this Commonwealth. The question as to what part of the property of a charity is exempt from taxation has been presented to our appellate courts in many cases, and as a consequence we have two lines of cases running through the books, in some of which the land has been held exempt and in others not exempt. Mr. Justice MITCHELL, in the case of Contributors to Penn. Hospital v. Delaware County, 169 Pa. 305, 308, 32 A. 456, thus describes the two classes: "Property which is not used directly for the purposes and in the operation of the charity, but for profit, is not exempt, and the devotion of the profit to the support of the charity will not alter this result. Of this class of cases Am. Sunday School Union v. Phila., 161 Pa. 307, is the exemplar and authority. But property which is used directly for the purposes and in the operation of the charity is exempt, though it may also be used in a manner to yield some return and thereby reduce the expenses: Donohugh's App., 86 Pa. 306; Phila. v. Penna. Hospital for Insane, 154 Pa. 9; House of Refuge v. Smith, 140 Pa. 387."

It is necessary to state the essential facts in order that we may apply the law. The plaintiff obtained its charter in 1879 as a corporation of the first class. In its application the purpose is described as follows: "The object of this association is to establish a home

for the orphans and half-orphans of the United Presbyterian Church, and other orphans and friendless children offered to the association." For more than 50 years the association has conducted a home for orphans and friendless children, keeping and maintaining such minors until they are fourteen years of age. The home is open to all applicants without distinction of race or creed to the extent of the capacity of the institution. Some of the children contribute to their support and others pay nothing. The balance necessary for the operation of the home, about $1,000 per month, is provided by the plaintiff from donations and subscriptions, and from its own funds.

Prior to 1929, the home was located on the North Side in the City of Pittsburgh. In that year, it was determined by the management to remove the institution to the country, and the farm in question was purchased. The land at the time was improved with a large dwelling, a barn, and four small dwellings. In the language of the lower court: "The change was made from the city to the country in order to avoid the pent up conditions of a city home and avoid the zoning ordinances that would hamper them." The large house was remodeled as a home for the children, one of the small houses was used for an infirmary, and the remaining dwellings were occupied by the help. Of the 237 acres, between 60 and 75 acres are in scrub timber or a wood lot, and the balance is arable land or occupied by buildings. The plaintiff, in the operation of the institution, has with hired help farmed and gardened about 150 acres of the land, using the products to supply part of the food for the children and to feed the horses and cattle. The farming has been done largely with hired help, but the older children did some work in the garden. They are able to provide from this source all of the milk, part of the butter, and large quantities of garden products. A negligible

portion of the products is sold, but the proceeds are all used to provide for the maintenance of the institution. The association has been able to operate the farm and garden so that the value of the produce has approximately equalled the cost of production, but there has not been any financial profit in such operations. About 75 children have been maintained in the home. They now have accommodations for 82 and expect this quota to be filled.

This case belongs to the second class, above mentioned, where the land is used for the purposes of and in the operation of the charity. That the farming operations are not carried on for profit is the only inference that can be drawn from the evidence. An enterprise may be carried on for profit even though it does not result in a financial return. On the other hand, property may be used directly for the purposes and in the operation of a charity and yield some return or reduce expenses and still be exempt: Penna. Hospital v. Delaware County, supra; U. of P. Christian Assn. v. Philadelphia, 75 Pa. Superior Ct. 516. In this case the managers of the institution were not paid any compensation, and an experienced farmer was exercising daily supervision over the operations without any remuneration. These operations were so conducted that there was a very slight loss in the operation of the farm. It is fair to assume, therefore, that the farming operations were not conducted for the purpose of yielding a profit, but with some other object in view. There is then lacking one of the elements necessary to place the case in the first class. We have here one entire establishment operated as a unit. The farm is adapted and devoted to the accomplishment of the main object of the institution as expressed in its charter. The children are furnished with an environment that is conducive to their physical, social, intellectual, and spiritual development. The evidence shows that the institution was removed from the

streets of a busy and congested city that they might have the healthful surroundings of the country. In promoting the development of the children, it was very proper that they should be placed in an atmosphere where an important life work was being carried on and some of them might have a part in the work. Men and women were busy and were engaged in producing the necessities of life. That such surroundings are conducive to the production of good citizens with sound bodies and clean minds is recognized by all authorities and is a matter of common knowledge. While there is not any evidence as to the precise manner in which the children use this property, it goes without saying that the fields and woods are suitable for camping, study of nature, playing of games, and other recreational purposes.

It has been suggested that more land was taken than necessary. The buildings provided accommodations for 82 children. Less land might have been used and the children turned loose to play upon the public roads or on the lands of neighbors, but the management of the institution, in the exercise of a wise judgment, have seen fit to provide sufficient land that the children may find an outlet for their youthful craving for exercise and play without trespassing upon the property of neighbors. We are of the opinion that the provision in the Act of Assembly that ''the grounds thereto annexed and necessary for the occupancy and enjoyment of the same'' are exempted from all and every taxation, is broad enough to cover the entire acreage of the farm and exempt from taxation the 219 acres as well as the 18 acres of land. ''It is not for the courts to substitute their judgment for that of the governing board on the question of what grounds are necessary. The word 'necessary' as used in the statute does not mean 'absolute necessity,' but rather a 'reasonable necessity,' 'convenient and useful' to the purpose of

the charity": County of Lancaster v. Y. W. C. A., 92 Pa. Superior Ct. 514, 518.

The cases of Penn. Hospital v. Delaware County, supra, and County of Lancaster v. Y. W. C. A., supra, cases of the second class, rule this case. Those decisions cannot be examined without observing that the facts there are close to parallel with the facts in this case. The cases of Sisters of the Blessed Sacrament, 38 Pa. Superior Ct. 640, and American Sunday School Union v. Philadelphia, 161 Pa. 307, 29 A. 26, are typical of cases where land was held not exempt from taxation. In the case decided by this court, a farm was purchased separate from the institution, and there farming operations were carried on for a profit. There was not any evidence that the lands were used or useful in the accomplishment of the purposes of charity, except that they supplied food for the students and managers of the institution, and the operations were not different than if they had embarked on a separate enterprise in another place for the production of shoes or clothing. In the Sunday School Union case decided by the Supreme Court, a separate enterprise, a retail trade, was carried on for profit. These cases belong to the first class and are clearly distinguishable from the facts in the present case.

Some reference has been made to the wood lot or timber land. We are unable to see that this presents any different problem than the rest of the farm. A farm in western Pennsylvania without a wood lot would be as much of an anomaly as one without a barn, and here this woodland was suitable as a play ground for the children where they might roam and hike and still be under the supervision of their elders. There is a limit to the amount of land that may be said to be adapted to the accomplishment of the purposes of a charity and be exempt from taxation, and in such cases a pure question of fact may arise which must

be determined by the fact-finding body, but here the line has not been reached. We are compelled to differ with the learned judge below and are all of the opinion that the chancellor drew the lines too fine in holding that the 219 acres of land were not exempt from taxation.

The decree dismissing the bill is reversed, and it is directed that the court below reinstate the bill and issue an injunction not inconsistent with this opinion.